United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 24, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-37611** |
| **STEINMETZ PLUMBING, INC.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | **CHAPTER 11** |

**MEMORANDUM OPINION**

Disclosure and transparency are paramount to the integrity of the bankruptcy system. This Court addresses a fundamental issue of professional integrity and fiduciary duty in bankruptcy proceedings: whether counsel for a debtor may simultaneously represent the debtor and its insiders, fail to disclose this dual representation, and then continue in its role after the conflict is discovered. The answer under Fifth Circuit precedent and the Bankruptcy Code is unequivocally no.

Mr. Kevin M. Epstein, the United States Trustee for Region 7 seeks immediate relief from this Court vacating the Lane Law Firm, PLLC's retention order previously entered by this Court. On Wednesday, April 15, 2026, the Court conducted a hearing which was ultimately concluded on May 13, 2026.

For the foregoing reasons, the Court finds that the United States Trustee's Expedited Motion to Reconsider and Vacate Order Approving Employment of The Lane Law Firm, PLLC as Counsel for the Debtor is well-taken and must be granted. The Lane Law Firm violated Federal Rule of Bankruptcy Procedure 2014(a) by failing to disclose its prior and concurrent representation of the Debtor's insiders. This failure alone is sufficient under Fifth Circuit precedent to warrant vacatur of the employment order and denial of the employment application. Additionally, the Lane Law Firm fails to satisfy the statutory requirements of Section 327(a) because it is not a

disinterested person and holds interests adverse to the estate. The firm's prior representation of the Debtor's insiders creates an irreconcilable conflict with the estate's need for independent counsel to investigate and potentially pursue claims against those individuals. Finally, the motion is well-taken under Federal Rules of Civil Procedure 54(b), 60(b)(2), and 60(b)(3). The integrity of the bankruptcy process depends upon transparency and the disinterestedness of professionals appointed to serve the estate. The Lane Law Firm's conduct undermines that integrity and cannot be permitted to continue. The Court disqualifies the Lane Law Firm from further representation of the Debtor in this proceeding. The Court will separately issue an order setting a hearing in which the Lane Law Firm must show cause as to why any fees should be awarded, previously paid fees be disgorged or any other appropriate sanction should be assessed.

## I.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("*Rule*") 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.   This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

## A.  Procedural History

1.  On December 16, 2025 (the "*Petition Date*"), Steinmetz Plumbing, Inc. ("*Debtor*") filed for bankruptcy protection under subchapter V, chapter 11 of the Bankruptcy Code[1] initiating the bankruptcy case.

2.  On December 17, 2025, the Lane Law Firm, PLLC (the "*Lane Law Firm*") filed its

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

"Application To Employ The Lane Law Firm PLLC As Counsel For The Debtor-In-Possession" ("*Employment Application*").[2]

3. On January 8, 2026, the Court entered an order granting the Employment Application, which approved the Lane Law Firm as Debtor's counsel ("*Retention Order*").[3]

4. On January 8, 2026, Kevin M. Epstein, the United States Trustee for Region 7 (the "*U.S. Trustee*") appointed Mr. Tom A. Howley, subchapter V trustee (the "*Subchapter V Trustee*").[4]

5. On March 16, 2026, Debtor timely filed its plan of reorganization (the "*Plan*").[5]

6. On March 17, 2026, the Court issued its order scheduling a hearing on confirmation of Debtor's Plan.[6]

7. On March 24, 2026, the Lane Law Firm filed its "Interim Application For Compensation And Expenses By The Lane Law Firm, PLC, Attorneys For The Debtor-In-Possession" ("*Interim Fee Application*").[7]

8. On April 8, 2026, the U.S. Trustee filed the "United States Trustee's Objection To Confirmation Of The Debtor's Chapter 11 Plan Dated March 16, 2026" ("*Objection to Confirmation*").[8]

9. On April 9, 2026, the U.S. Trustee filed the "Expedited Motion To Reconsider And Vacate Order Approving Employment Of The Lane Law Firm, PLLC As Counsel For The Debtor" ("*Vacatur Motion*").[9]

10. On April 9, 2026 the U.S. Trustee filed the "United States Trustee's Objection To The Interim Application For Compensation And Expenses By The Lane Law Firm, PLLC, As Attorneys For The Debtor-In-Possession" ("*Objection to Interim Fee Application*").[10]

11. On April 15, 2026, the Court held a hearing on (1) Plan confirmation; (2) the Interim Fee Application; and (3) the Vacatur Motion.

12. On April 15, 2026, the Court entered its order (1) abating consideration of the Plan confirmation and Interim Fee Application and (2) granting the Vacatur Motion in part; (3)

---

[2] ECF 10.
[3] ECF No. 22.
[4] ECF No. 24.
[5] ECF No. 40.
[6] ECF No. 41.
[7] ECF No. 45.
[8] ECF No. 46.
[9] ECF No. 49. *See also* ECF No. 48 (expedited motion to reconsider corrected by the filing at ECF No. 49).
[10] ECF No. 50.

ordering the Lane Law Firm to file an amended Bankruptcy Rule 2014 disclosure; and (4) setting a further and final hearing on the Vacatur Motion.[11]

13. On May 13, 2026, the Court held a final hearing and now issues its instant Memorandum Opinion.

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[12]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[13]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning retention and compensation of professionals pursuant to 11 U.S.C. §§ 327, 330 and Bankruptcy Rule 2014, and the administration of this estate.[14]  This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[15]

This Court may only hear a case in which venue is proper.[16]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's bankruptcy case is pending in this Court and therefore, venue of this proceeding is proper.

---

[11] ECF No. 60.

[12] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

[13] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[14] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

[15] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

[16] 28 U.S.C. § 1408.

**B.  Constitutional Authority to Enter a Final Order**

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[17]  The retention of professionals pursuant to 11 U.S.C. §327, and Bankruptcy Rule 2014, pending before this Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[18] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[19] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment in this matter. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

## III.    ANALYSIS

The U.S. Trustee has filed his Vacatur Motion, requesting reconsideration and vacatur of the Court's Retention Order that approved the Lane Law Firm as Debtor's counsel.[20] The Vacatur Motion is supported by three independent and compelling grounds, each of which independently

---

[17] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[18] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[19] *Wellness Int'l Network, Ltd.,* 135 S. Ct. at 1947 ("Sharif con-tends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[20] ECF Nos. 22, 49.

warrants vacatur of the Retention Order and denial of the Employment Application. The Court will consider each in turn.

## A. Whether the Lane Law Firm Retention Order should be vacated

The U.S. Trustee asserts that the Lane Law Firm's failure to disclose a connection adverse to the Debtor and its estate is grounds for reconsideration and vacatur of the Retention Order because its prior representation of the Debtor's affiliated insiders is a disqualifying conflict of interest that cannot be cured by disclosure or waiver.[21]

## B. Background

On January 23, 2026, the U.S. Trustee conducted the meeting of creditors.[22] At the meeting of creditors, Rebecca Steinmetz ("*Mrs. Steinmetz*") was unable to provide satisfactory explanations regarding distributions made by the Debtor to Dwaine Steinmetz ("*Mr. Steinmetz*") (together with Mrs. Steinmetz, the "*Steinmetzs*") in 2023 totaling $362,938.[23] The U.S. Trustee asserts that on February 20, 2026, the Lane Law Firm provided to the U.S. Trustee, via electronic means, accounting records from January 2022 through February of 2026, and copies of the 2024 Forms W-2 issued to the Steinmetzs.[24] Upon review of the accounting records, the U.S. Trustee discovered that the Steinmetzs had filed a personal bankruptcy case.[25] The Steinmetzs filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 25-31642, on March 27, 2025, and received a discharge on July 15, 2025.[26] The Lane Law Firm represented the Steinmetzs in their personal bankruptcy case.[27] The Debtor signed a retainer agreement with the

---

[21] ECF No. 49 at 3, ¶ 7.
[22] ECF No. 19.
[23] ECF No. 55-16; Apr. 15, 2026 H'rg Tr. at 21–22.
[24] ECF No. 49 at 4.
[25] Bankr. 25-31642, ECF No. 1.
[26] Bankr. 25-31642, ECF Nos. 1, 21.
[27] Apr. 15, 2026 H'rg Tr. at 48, 68. *See also generally* Bankr. 25-31642 Docket Sheet.

Lane Law Firm for debt resolution consultation on January 6, 2025.[28] The Lane Law Firm's initial Bankruptcy Rule 2014 disclosure filed on December 17, 2025 (the "*Initial 2014 Disclosure*") did not disclose the Lane Law Firm's prior or concurrent representation of the Steinmetzs.[29]

On February 26, 2026, the U.S. Trustee, the Lane Law Firm, and the Subchapter V Trustee engaged in a conference call to discuss the Lane Law Firm's disclosure failures and the apparent conflict of interest.[30] Following this call, the Lane Law Firm filed an amended Bankruptcy Rule 2014 disclosure on February 26, 2026 (the "*First Amended 2014 Disclosure*") that disclosed the Lane Law Firm's prior representation of the Steinmetzs in their personal bankruptcy case and stated the firm's belief that the Debtor had no claims against the Steinmetzs.[31] However, the First Amended 2014 Disclosure failed to disclose whether the Lane Law Firm represented both the Debtor and the Steinmetzs concurrently.[32] Nor did the First Amended 2014 Disclosure explain what investigation the Lane Law Firm conducted to determine that the Debtor had no material claims against the Steinmetzs.[33] A comprehensive review of the Debtor's accounting records and financial statements reveals substantial payments potentially made by the Debtor on behalf of the Steinmetzs, that could give rise to avoidance actions by the Debtor against the Steinmetzs for the benefit of the estates and creditors. These payments include:

i.   **Personal expenses and luxury goods and services**

The Debtor's accounting records dating back to 2023 reveal that Debtor paid thousands of dollars for goods and services that appear unrelated to running a plumbing business. For example, records show that Debtor made payments for online video and gaming subscriptions,[34] food

---

[28] ECF No. 66-1, ¶ 1, 2.
[29] ECF No. 10-1.
[30] Apr. 15, 2026 H'rg Tr. at 62–63.
[31] ECF No. 39.
[32] ECF No. 39.
[33] ECF No. 39.
[34] ECF No. 55-18 at 11; ECF No. 55-16 at 5, 7.

delivery services,[35] meals at upscale establishments including Top Golf and other bars,[36] luxury goods and accessories such as Kate Spade purses,[37] beauty treatments and personal grooming services,[38] entertainment expenses including Houston Astros Tickets,[39] veterinary and pet supply expenses,[40] travel, vacations and hotel stays[41] and high-end home interior decorating and furnishings.[42]

Mrs. Steinmetz testified that some of these expenses were related to marketing of the Debtor's business, such as sponsorships, gift basket giveaways and Debtor branded clothing and accessories.[43] However, when questioned about the transactions, she could not confirm whether or not many of them were indeed for business or personal use.[44] For example, Mrs. Steinmetz stated that a $52,932 payment to Nikole Starr Interiors for interior design services was not for her personal residence but also admitted that it was not a business expenses and that it was included in her accounting records as a shareholder distribution.[45] She also could not recall whether a $1,395 charge for jewelry was a business expense and even admitted that some of the charges were indeed for non-business expenses.[46]

ii.    **Vehicle expenses**

The Debtor paid monthly vehicle expenses totaling $2,617 for the Steinmetzs' 2023 Cadilac Escalade.[47] The Escalade was listed on the Steinmetz's personal bankruptcy schedules as

---

[35] ECF No. 55-18 at 11; ECF No. 55-19 at 15.
[36] ECF No. 55-19 at 14; ECF No. 55-16 at 5.
[37] ECF No. 55-16 at 13.
[38] ECF No. 55-16 at 7.
[39] ECF No. 55-16 at 12.
[40] ECF No. 55-16 at 5.
[41] ECF No. 55-16 at 5.
[42] ECF No. 55-16 at 11.
[43] Apr. 15, 2026 H'rg Tr. at 26–28.
[44] Apr. 15, 2026 H'rg Tr. at 26–28.
[45] Apr. 15, 2026 H'rg Tr. at 28, 29.
[46] Apr. 15, 2026 H'rg Tr. at 26, 27.
[47] ECF No. 55-16 at 13; ECF No. 55-4 at 5; Apr. 15, 2026 H'rg Tr. at 42.

owned by them individually and valued at $90,000.[48] The Steinmetzs also entered into a reaffirmation agreement for the Escalade in their personal bankruptcy case.[49] The Debtor's Statement of Financial Affairs disclosed these vehicle expenses for the Cadilac.[50]

### iii.    Salary and distributions

The Debtor paid salaries to both Mr. Steinmetz and Mrs. Steinmetz.[51] In addition to salary, the Debtor made substantial distributions to the Steinmetzs, including distributions to Mr. Steinmetz during 2023 totaling $362,938.[52]

### iv.    Rent payments

The Debtor pays monthly rental payments of $4,500 to the Steinmetzs for use of a building located on the Steinmetzs' homestead property.[53] Prior to the Debtor's bankruptcy filing, the monthly rent was $3,270, demonstrating a significant increase in the current rent being paid from the Debtor to its insiders.[54]

### v.    Potential SBA loan misappropriation

The Debtor incurred a Small Business Administration ("*SBA*") loan in the amount of approximately $800,000 in 2020.[55] The transactions detailed *infra*, reveal that some of the cash held by the Debtor was potentially used for the personal expenses of the Steinmetzs. Thus, the Steinmetzs may have used all or part of an SBA loan for their own living expenses, leaving the Debtor with this debt and subsequently requiring the Debtor to obtain additional high-interest financing.[56]    Additionally,    Mrs.    Steinmetz    acknowledged    that    the    Debtor's    cash

---

[48] ECF No. 55-1 at 10.
[49] ECF No. 55-4.
[50] ECF No. 55-5 at 44.
[51] Apr. 15, 2026 H'rg Tr. at 56; ECF No. 55-5 at 43.
[52] ECF No. 55-16 at 1.
[53] Apr. 15, 2026 H'rg Tr. at 34, 36; ECF No. 55-5 at 43.
[54] Apr. 15, 2026 H'rg Tr. at 36.
[55] Apr. 15, 2026 H'rg Tr. at 45.
[56] *See* ECF No. 40 at 10, 11.

position deteriorated by approximately $1 million from 2020 to 2023, and she was unable to explain, with any detail, how the Debtor's cash position declined so significantly, despite that the fact that the Debtor is a service-based business whose revenue typically aligns with the costs of supplies and payroll.[57]

### C. The Lane Law Firm's Bankruptcy Rule 2014 Disclosure

As ordered by the Court, on April 29, 2026, the Lane Law Firm filed a second amended Bankruptcy Rule 2014 disclosure (the "*Second Amended 2014 Disclosure*") that purported to provide details of the investigation the Lane Law Firm conducted to determine that the Debtor held no viable causes of actions against the Steinmetzs. [58] The Second Amended 2014 Disclosure includes a sworn statement by Robert Lane of the Lane Law Firm providing that:

> I do not believe that there is a conflict in representation, and believe the representation of Dwaine and Rebecca Steinmetz does not prohibit the employment as counsel in the current case. As part of the representation of both parties, I conducted an investigation and do not believe the estate has any claims against Dwaine or Rebecca Steinmetz. The details are attached as Exhibit 1 to this Second Amended Affidavit.[59]

The exhibit attached to the Second Amended 2014 Disclosure sets forth the details of the investigation conducted by the Lane Law Firm, which provides in pertinent part that:

> 5. As part of the evaluation of representation before filing either the personal or business case, our firm reviewed bank statements and financial statements of the Debtor and Dwaine and Rebecca Steimetz.
> 6. Small transactions, which were determined to be de minimis, existed in which Dwaine or Rebecca Steinmetz may have inadvertently used a business card for a personal expense.
> 7. Details regarding many of the other transactions between the Debtor and Dwaine and Rebecca Steinmetz were examined. This included but was not limited to expenses involving vehicles, rent paid by the business to Dwaine and Rebecca Steinmetz, and other transactions that may not appear have an initial business purpose.

---

[57] Apr. 15, 2026 H'rg Tr. at 21, 45–46, 61.
[58] ECF No. 66.
[59] ECF No. 66 at ¶ 4.

8. After examining the financial records of the Debtor and Dwaine and Rebecca Steinmetz, I did not believe that the Debtor has claims against Dwaine and Rebecca Steinmetz individually that warranted nor would lead to any recovery that would benefit the Chapter 11 estate . . . .

11. For all the foregoing reasons, it was determined to be in the best interest of the creditors for the Debtor to proceed with a Chapter 11 reorganization and not to pursue Chapter 5 causes of action against Dwaine and Rebecca Steinmetz.[60]

Notably, the Second Amended 2014 Disclosure did not detail why the Lane Law Firm believed that there was no causes of action against the Steinmetzs that were worth pursuing.[61] Nor did it expressly state whether the representation of the Steinmetzs and Debtor was ever concurrent.[62]

### D. Previous disqualification of the Lane Law Firm in other bankruptcy cases

The Lane Law Firm's employment order was vacated in the Western District of Texas in February 2026 in Case No. 25-52669, ATEG Enterprises, Inc. ("*In re ATEG*") for failure to disclose its dual representation of affiliated entities.[63] The U.S. Trustee filed a motion seeking vacatur of the Lane Law Firm's retention as counsel to the debtor ("*ATEG*") in *In re ATEG* (the "*ATEG Vacatur Motion*") on substantially similar grounds as the instant Vacatur Motion.[64] The ATEG Vacatur Motion asserted that the Lane Law Firm dually represented both ATEG and an entity named Cruz Tec, an affiliate of ATEG which owed money to ATEG.[65] After an evidentiary hearing was held on February 25, 2026, the court in *In re ATEG* granted the ATEG Vacatur Motion and disqualified the Lane Law Firm as debtor' counsel. [66] Moreover, in Cruz Tec's separate bankruptcy case in the Southern District of Texas, Case No. 25-35537, the bankruptcy court, on

---

[60] ECF No. 66-1.
[61] ECF No. 66-1.
[62] ECF No. 66-1.
[63] Bankr. 25-52669, ECF No. 85.
[64] Bankr. 25-52669, ECF No. 66.
[65] Bankr. 25-52669, ECF No. 66 at 7.
[66] Bankr. 25-52669, ECF No. 86.

May 11, 2026, disqualified the Lane Law Firm as debtor's counsel and vacated the firm's employment retention due to its dual representation of Cruz Tec and ATEG.[67]

### E.     The U. S. Trustee's Vacatur Motion

The U.S. Trustee's Vacatur Motion will be granted on three independent grounds, each of which is sufficient to warrant vacatur of the Retention Order and denial of the Employment Application. First, the Lane Law Firm violated Bankruptcy Rule 2014(a) by failing to disclose its prior representation of the Debtor's insiders. Bankruptcy Rule 2014(a) requires professionals to disclose all connections with the debtor, creditors, or parties in interest.[68] The disclosure requirements are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they rise to the level of a disqualifying interest.[69] The Lane Law Firm's Initial 2014 Disclosure falsely represented that it had no connections with the Debtor or parties in interest, when in fact it had represented the Steinmetzs in their personal bankruptcy case and had a conflict in determining whether to pursue causes of actions against the Steinmetzs. The firm disclosed this connection only after the U.S. Trustee discovered it and confronted the firm. Under Fifth Circuit precedent, failure to disclose is sufficient grounds to revoke an employment order and deny compensation, even if no prejudice resulted.[70]

Second, the Lane Law Firm fails to satisfy the statutory requirements of disinterestedness and absence of adverse interest. Section 327(a) of the Bankruptcy Code requires that professionals be disinterested persons who do not hold or represent an interest adverse to the estate.[71] The Debtor's financial records reveal hundreds of thousands of dollars in payments to the Steinmetzs

---

[67] Bankr. 25-35537, ECF No. 154.
[68] FED. R. BANKR. 2014(a).
[69] *Waldron v. Adams & Reese*, *L.L.P.* (*In re Am. Int'l Refinery, Inc.*), 676 F.3d 455, 465 (5th Cir. 2012).
[70] *Id.*
[71] 11 U.S.C. § 327(a).

that may constitute fraudulent transfers or preferences.[72] The estate has a duty to investigate and potentially pursue claims against the Steinmetzs. The Lane Law Firm cannot objectively evaluate such claims given its recent representation of the Steinmetzs. The firm's prior loyalty to the insiders, its duty to protect their confidential information, and its practical inability to approach claims against them with detached judgment render it unable to serve as disinterested counsel.[73]

Third, the motion is well-taken under Rules 54(b), 60(b)(2), and 60(b)(3). The Retention Order is an interlocutory order that may be revised when justice requires it.[74] The U.S. Trustee exercised due diligence in discovering the undisclosed connections, and the evidence is material and controlling: it would clearly have produced a different result had it been available when the Court considered the Employment Application.[75] Additionally, the Lane Law Firm's misrepresentation in its Initial 2014 Disclosure constitutes misconduct that prevented the U.S. Trustee and parties in interest from fully and fairly presenting their positions.

### F. The Lane Law Firm's Rule 2014(a) Disclosure failures independently require vacatur and denial of employment

Sections 327(a) and 101(14) of the Bankruptcy Code provide that a professional must be disinterested and have no interest adverse to the bankruptcy estate.[76] The primary policy behind Sections 327(a) and 101(14) of the Bankruptcy Code is to ensure that professionals employed by the bankruptcy estate are free from conflicts of interest and can act solely in the best interests of the estate and its creditors. Section 327(a) requires that professionals "do not hold or represent an interest adverse to the estate" and are "disinterested persons," while Section 101(14) defines

---

[72] *See supra* Sections III.B.i–v.
[73] *See Doe v. A Corp.*, 709 F.2d 1043 (5th Cir. 1983), *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 172 (5th Cir. 1979).
[74] *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *Dodson v. Huff* (*In re Smyth*), 207 F.3d 758, 763 (5th Cir. 2000).
[75] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005).
[76] 11 U.S.C. §§ 327(a) and 101(14).

"disinterested person."[77]   These provisions work together to prevent professionals from serving competing interests that could compromise their loyalty to the estate. The Fifth Circuit has emphasized that to be eligible for employment under Section 327(a), a professional must demonstrate both that it is disinterested and that it does not hold or represent an interest adverse to the bankruptcy estate.[78]

The Bankruptcy Code provides courts with continuing supervisory authority to ensure compliance with these standards throughout the professional's employment. Section 328(c) expressly permits bankruptcy courts to revisit professional employment under Section 327(a) and deny compensation if at any time during the employment such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate.[79] This ongoing duty reflects the policy that the requirement and duty under the Bankruptcy Code for professionals to remain disinterested is ongoing.

Bankruptcy Rule 2014(a) mandates that proposed counsel provide specific disclosures that provide the Court with sufficient information to determine whether that proposed counsel is disinterested and free from the influence of adverse interests.[80] Among these disclosures, the employment application must state "to the best of the applicant's knowledge, all of the person's connections with the debtor; creditors; [or] any other party in interest … [and] must be accompanied by a verified statement of the person to be employed, setting forth the person's connections with [the debtor, creditor, or any other party in interest] . . . ." [81]

---

[77] 11 U.S.C. §§ 327(a) and 101(14).
[78] *In re McDermott International, Inc.*, 614 B.R. 244, 249 (2020).
[79] 11 U.S.C. § 328(c).
[80] FED. R. BANKR. P. 2014(a).
[81] FED. R. BANKR. P. 2014(a)(2)–(3).

Professionals appearing in this Court are required to disclose all connections and all necessary details, without determining their relevance or significance.[82] This obligation is ongoing, demanding immediate, comprehensive, and full disclosure.[83]

Although Bankruptcy Rule 2014(a) does not explicitly require ongoing disclosure, "case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises."[84] The consequences of disclosure failures are severe. Counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny all compensation, even if it is ultimately determined that no actual conflict exists.[85]

The Lane Law Firm's disclosure failures are manifest and compel vacatur of the Retention Order and denial of the Employment Application. The Initial 2014 Disclosure represented that the firm had no connections with the Debtor, creditors, or other parties in interest.[86] This representation was false. The firm had previously represented the Steinmetz, the Debtor's insiders, in their personal Chapter 7 bankruptcy case filed in March 2025 and discharged in July 2025.[87] This prior representation constitutes a connection that Bankruptcy Rule 2014(a) requires to be disclosed.[88] Mr. Steinmetz, the Debtor's sole owner, and Mrs. Steinmetz, the Debtor's secretary, who receive salary, distributions, and cash payments for rental, vehicle, and personal expenses from the Debtor, are clearly parties in interest. The Lane Law Firm in turn, had a connection to the Steinmetzs via its prior representation of them. The Lane Law Firm possessed knowledge of this connection at

---

[82] *In re C&C Demo, Inc.*, 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001).

[83] 11 U.S.C. § 328(c); *In re Am. Int'l Refinery, Inc.*, 676 F.3d at 465-66.

[84] *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005).

[85] *Id.*; *In re Am. Int'l Refinery, Inc.*, 676 F.3d at 465.

[86] ECF No. 10-1.

[87] Bankr. 25-31642, ECF Nos. 1, 21; Apr. 15, 2026 H'rg Tr. at 48, 68.

[88] *See e.g., KLG Gates LLP v. Brown*, 506 B.R. 177, 187 (E.D.N.Y. 2014).

the time it filed the Debtor's bankruptcy case and filed its Employment Application. Indeed, at the April 15, 2026 hearing, Robert Lane of the Lane Law Firm conceded that the firm's failure to disclosure its prior representation of the Steinmetzs in the Initial 2014 Disclosure was erroneous.[89]

Moreover, the Lane Law firm failed to make proper disclosure spontaneously and timely. In the Lane Law Firm's First Amended 2014 Disclosure, filed only after the U.S. Trustee discovered the personal bankruptcy case through financial records and raised the issue, the Lane Law Firm disclosed its prior representation of the Steinmetzs.[90] The disclosure occurred not spontaneously but only after investigation and confrontation by the U.S. Trustee. A disclosure made only in response to external pressure, and even then incomplete, falls short of the standard required by Bankruptcy Rule 2014(a).[91] The nondisclosure deprived the court and parties in interest of the ability to evaluate the Lane Law Firm's retention when the employment order was entered. At the time the court approved the firm's employment, the Court lacked material information necessary to assess whether the firm was disinterested and held no interest adverse to the estate.

In any event, the First Amended 2014 Disclosure was not adequate because it did not indicate whether the Lane Law Firm was representing the Steinmetzs and Debtor concurrently. This is troubling to the Court because the evidence demonstrates that there was an overlap between the representation of the Debtor and the Steinmetzs. Both the Debtor's schedules and the schedules filed in the personal bankruptcy case disclose payments to the Lane Law Firm but fail to include the dates in which the Lane Law firm received payments from either the Debtor or the

---

[89] Apr. 15, 2026 H'rg Tr. at 69.
[90] ECF No. 39.
[91] *In re Vascular Access Ctrs., L.P.*, 613 B.R. 613, 626 (Bankr. E.D. Pa. 2020) ("[A] professional's belated disclosure, as a result of a United States Trustee's objections, cannot overcome a professional's violation of Rule 2014(a).").

Steinmetzs.[92] Even at the April 15, 2026 hearing, Mrs. Steinmetz and Robert Lane testified that they could not recall the exact dates that payments were made.[93] This purported lack of knowledge is significant because at the very least, it demonstrates a lack of effort by the Lane Law Firm to comply with Bankruptcy Rule 2014(a) and investigate its connections before filing the First Amended 2014 Disclosure, even after the concern of the dual representation was raised by the U.S Trustee. The Second Amended 2014 Disclosure reveals that the Lane Law Firm was initially contacted by the Debtor in December 2024 for debt relief consultation and that the Debtor signed a retainer agreement on January 6, 2025.[94] The Steinmetzs signed a retainer agreement on January 1, 2025 for their personal chapter 7.[95] The initial intent when first meeting with the Steinmetzs was for the Lane Law Firm to file a chapter 11 for the Debtor.[96] Given the overlap between the Lane Law Firm's consultation of the Debtor and the Steinmetzs, the Court finds that there was a period of concurrent representation of the Debtor and Steinmetzs that the Lane Law Firm failed to timely disclose under Bankruptcy Rule 2014(a), even after concerns were raised by the U.S. Trustee. This continued omission demonstrates that the Lane Law Firm did not make the full, candid, and complete disclosure required by Bankruptcy Rule 2014(a).

Fifth Circuit precedent makes clear that disclosure failures alone are sufficient to warrant revocation of an employment order and denial of compensation, without requiring a finding of actual conflict of interest.[97] The Court need not find that the undisclosed connection rises to the level of a disqualifying conflict; the failure to disclose itself is the basis for the remedy.[98] The Lane Law Firm's failure to disclose its prior representation of the Debtor's principals in their personal

---

[92] ECF No. 55-1 at 91; ECF No. 55-5 at 36.
[93] Apr. 15, 2026 H'rg Tr. at 17, 68–69.
[94] ECF No. 66-1.
[95] ECF No. 66-1.
[96] Apr. 15, 2026 H'rg Tr. at 69.
[97] In re Am. Int'l Refinery, Inc., 676 F.3d at 465.
[98] *Id.*

Chapter 7 bankruptcy case, combined with its failure to disclose the period of concurrent representation constitutes a clear violation of Bankruptcy Rule 2014(a). The First Amended 2014 Disclosure, filed only after U.S. Trustee investigation and still omitting the concurrent representation period, does not cure this violation. The nondisclosure deprived the Court and parties in interest of material information necessary to evaluate the firm's retention and undermined the integrity of the bankruptcy process.[99]

### G. The Lane Law Firm fails to satisfy the statutory requirements of disinterestedness and absence of adverse interest

Section 327(a) of the Bankruptcy Code provides that a trustee or debtor in possession may employ professionals only if they do not hold or represent an interest adverse to the estate and are disinterested persons.[100] In the same fashion, in order to receive compensation as counsel for the debtor, an attorney must be disinterested and may hold no interest adverse to the bankruptcy estate.[101] Section 328(c) allows the court to deny compensation to a professional in any case where such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate.[102]

A disinterested person is defined in the Bankruptcy Code as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[103]   A party possesses an adverse interest to the estate if they "possess or assert any economic interest that would tend to lessen the value of the bankruptcy

---

[99] *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) (finding that a court "should not have to 'rummage through files or conduct independent fact-finding investigations' to determine whether the professional should be disqualified").
[100] 11 U.S.C. § 327.
[101] *In re Humble Place Joint Venture*, 936 F.2d 814, 819 (5th Cir. 1991).
[102] *Id.* (citing 11 U.S.C. § 328(c)).
[103] 11 U.S.C. § (101)(14)(C).

estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or "possess a predisposition under circumstances that render such a bias against the estate."[104] The Lane Law Firm cannot satisfy the disinterestedness requirement because it holds and represents interests materially adverse to the estate. The facts revealed by the U.S. Trustee's investigation establish a substantial basis for potential avoidance actions and estate claims against the insiders, Mr. Steinmetz and Mrs. Steinmetz. who are the Debtor's sole owner and secretary, respectively. The Debtor's records from 2022 through 2026 reveal a pattern of transfers and payments that create a meaningful risk of avoidance or breach-of-duty claims. These include large distributions to insiders in 2023, ongoing salary payments, rent paid to the insiders for use of a building on their homestead property with a documented increase from pre-petition to post-petition levels, substantial personal expenses charged to the company including luxury goods, entertainment, travel, and vehicle payments for a high-value Escalade, and indications that business borrowing including an SBA loan may have been diverted to personal benefit.[105] The Debtor's cash position deteriorated sharply following these insider distributions.[106]

In a Chapter 11 case, the Debtor retains fiduciary obligations to the estate and creditors. The estate has a duty to scrutinize and, where warranted, pursue recovery of insider transfers and payments that may constitute preferences, fraudulent transfers, or breaches of fiduciary duty.[107] The Debtor's potential claims against the Steinmetzs represent significant assets of the estate and require independent investigation and evaluation by counsel free from conflicting loyalties.[108] The Lane Law Firm's recent representation of the Steinmetzs in their personal Chapter 7 bankruptcy

---

[104] *In re Am. Int'l Refinery, Inc.*, 676 F.3d at 461.
[105] *See supra* Sections III.B.i–v.
[106] *See supra* Sections III.B.i–v.
[107] *In re Hous. Reg'l Sports Network, L.P.*, 505 B.R. 468, 481 (Bankr. S.D. Tex. 2014); *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013).
[108] *In re Am. Int'l Refinery, Inc.*, 676 F.3d at 461.

case creates a direct and material conflict with the estate's interest in investigating and pursuing claims against those individuals. The firm's prior representation of the insiders as clients creates several layers of adversity.

A lawyer's duty of loyalty to a client continues after the representation has ended.[109] The Lane Law Firm acquired confidential information regarding the Steinmetzs' financial affairs, assets, liabilities, and personal circumstances during the prior Chapter 7 representation. That information may be directly relevant to evaluating the propriety of the transfers and payments at issue in Debtor's bankruptcy case. A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client, and such information is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship.[110]  This creates an inherent constraint on the Lane Law Firm's ability to provide candid, independent advice to the Debtor regarding investigation and potential pursuit of claims against the Steinmetzs who are insiders of the Debtor. The Fifth Circuit has recognized that when an attorney has represented one party and then represents an adverse party in the same or substantially related matter, there is a conclusive and irrebuttable presumption that permitting the attorney to represent the adversary will lead to disclosure and misuse of confidential information obtained during the previous representation.[111] Although that principle arises in the context of disqualification,[112] it reflects a fundamental concern about the integrity of representation when loyalties have shifted. In the bankruptcy context, where the estate requires independent counsel to evaluate potential claims against former clients of the same firm, the concern is equally acute. The Lane Law Firm's prior representation of the Debtor's insiders means that any advice the firm

---

[109] *See In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992).
[110] Brennan's, Inc., 590 F.2d at 172.
[111] Doe, 709 F.2d at 1046–47.
[112] *Id.* at 1050.

provides regarding investigation or pursuit of claims against those individuals will necessarily be colored by its prior relationship with them and its knowledge of their circumstances. The Lane Law Firm cannot be expected to approach such matters with the detached judgment and zealous advocacy that the estate requires.

The estate's need for independent evaluation is not cured by the firm's unilateral assertion that no claims exist against the insiders. The very question of whether avoidance actions or other claims should be pursued requires independent analysis by counsel with no prior relationship to the targets of such claims. The Lane Law Firm's prior representation of the insiders as clients means that the firm has an inherent interest in minimizing the exposure of those individuals to estate claims. This predisposition, whether conscious or unconscious, renders the firm unable to provide the impartial analysis that the estate requires. Bankruptcy courts have consistently held that when there is a conflict or a potential conflict of interest between the debtor corporation and the owner of such corporation, representation by the same counsel should not be allowed.[113] The conflict presented by Lane Law Firm's prior representation of the Debtor's insiders is not hypothetical or speculative. It is grounded in the firm's actual prior relationship with the individuals against whom the estate may need to pursue claims. The Lane Law Firm's loyalty to its former clients, its duty to protect their confidential information, and its practical inability to approach claims against them with detached judgment all render the Lane Law Firm unable to serve as disinterested counsel to the Debtor. The Lane Law Firm does not satisfy the requirements of section 327(a). The Lane Law Firm holds and represents interests materially adverse to the estate by virtue of its prior representation of the insiders in a matter substantially related to the estate's potential claims against those individuals. The Lane Law Firm is not a disinterested person

---

[113] *In re Red Lion*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994).

because it has a direct and indirect relationship to the insiders that creates a material conflict with the estate's interest in independent investigation and potential pursuit of avoidance actions and other claims.

### H. The Employment Order should be reconsidered and vacated under Rules 54(b), 60(b)(2), and 60(b)(3)

There is no specific provision for a motion to reconsider under the Federal Rules of Civil Procedure.[114] In the Fifth Circuit, a motion to reconsider may be brought under Rule 54(b) or Rule 59(e).[115]  Whereas Rule 59(e) applies only to final judgments and does not permit consideration of arguments that could have been raised previously, Rule 54(b) applies to interlocutory judgments and permits a district court to reconsider and reverse its decision for any reason.[116] "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."[117] The Fifth Circuit held that the district court erred when it evaluated a motion to reconsider an interlocutory order under the more stringent Rule 59(e) standard rather than the more flexible Rule 54(b) standard, warranting vacatur and remand of the denial.[118]

The facts and circumstances of this case justify reconsideration of the Retention Order because the Lane Law Firm made disclosure violations that are sufficient, standing alone, to deny or revoke the Retention Order. The U.S. Trustee's Vacatur Motion is well-taken under three independent procedural grounds: reconsideration of an interlocutory order under Rule 54(b), relief

---

[114] *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration.").

[115] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336–38 (5th Cir. 2017).

[116] *McClendon*, 892 F.3d at 781.

[117] *Austin*, 864 F.3d at 337 (internal quotations omitted).

[118] *Id.*

based on newly discovered evidence under Rule 60(b)(2), and relief based on fraud, misrepresentation, or misconduct under Rule 60(b)(3).

### A. Rule 54(b): reconsideration of interlocutory employment orders

An order approving professional employment in bankruptcy is interlocutory in nature, adjudicating a discrete issue within the broader bankruptcy proceeding rather than resolving all claims and parties.[119] Accordingly, such an order may be revised at any time before entry of a final judgment.[120] A district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.[121] In this case, the Retention Order was entered early in the bankruptcy proceeding based on Lane Law Firm's Initial 2014 Disclosure, which denied any connections with the Debtor, the Debtor's insiders, creditors, or other parties in interest.[122] Subsequent investigation revealed that this statement was incomplete and that the Lane Law Firm had undisclosed prior and concurrent representation of the Debtor's insiders, along with facts suggesting insider adversity. The Court's approval of employment was thus rendered without a complete factual record regarding potential conflicts of interest. Justice requires that the interlocutory Retention Order be reconsidered and vacated. The Retention Order was entered without full disclosure of material facts bearing directly on the Lane Law Firm's disinterestedness and the absence of adverse interests-prerequisites mandated by the Bankruptcy Code for professional employment.[123] Under Rule 54(b), the Court may revise the Retention Order to correct this deficiency and ensure that the integrity of the bankruptcy process is preserved.

### B. Rule 60(b)(2): newly discovered evidence

---

[119] *In re Delta Servs. Indus.*, 782 F.2d 1267, 1272 (5th Cir. 1986); *In re Pericone*, No. 10-152, 2010 U.S. Dist. LEXIS 153785, at *8 (E.D. La. Feb. 25, 2010).
[120] FED. R. CIV. P. 54.
[121] McClendon, 892 F.3d at 781.
[122] ECF No. 22.
[123] 11 U.S.C. § 327.

Rule 60(b) provides limited grounds for relief from orders and judgments.[124] Rule 60(b)(2) permits relief based on newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial.[125] Rule 60(b) is made applicable in bankruptcy cases by Bankruptcy Rule 9024.[126] To obtain relief under Rule 60(b)(2), a movant must demonstrate two elements: first, that it exercised due diligence in obtaining the information; and second, that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment.[127] The U.S. Trustee has satisfied the diligence requirement. Questions regarding Lane Law Firm's connections were raised at the meeting of creditors, prompting the U.S. Trustee to request records and conduct an investigation.[128] The U.S. Trustee did not passively accept the Initial 2014 Disclosure but actively pursued inquiry when red flags emerged during the meeting.[129] This responsive investigation demonstrates the requisite diligence.

The evidence of undisclosed prior and concurrent representation of the Debtor's insiders, and the facts suggesting insider adversity, is material and controlling. Had the Court been apprised of these connections at the time  it considered the Employment Application, it would not have approved Lane Law Firm's retention. The Bankruptcy Code requires that professionals employed by the debtor be disinterested persons who do not hold or represent an interest adverse to the estate.[130] Prior and concurrent representation of the Debtor's insiders, combined with indicators of insider adversity, directly contradicts the prerequisites for employment approval. The newly discovered evidence would clearly have produced a different result—denial of the Employment

---

[124] *Kemp v. United States*, 596 U.S. 528, 533 (2022).
[125] FED. R. CIV. P. 60(2).
[126] FED. R. BANKR. P. 9024.
[127] Hesling, 396 F.3d at 639.
[128] Apr. 15, 2026 H'rg Tr. at 21–22, 62–63.
[129] Apr. 15, 2026 H'rg Tr. at 21–22.
[130] 11 U.S.C. § 327(a).

Application—had it been available when the Court considered the Lane Law Firm's Employment Application.

### C.  Rule 60(b)(3): fraud, misrepresentation, or misconduct

Rule 60(b)(3) permits relief from a final judgment or order for fraud, misrepresentation, or misconduct by an opposing party.[131] To prevail on a Rule 60(b)(3) motion, a party must establish by clear and convincing evidence two elements: first, that the adverse party engaged in fraud or other misconduct; and second, that this misconduct prevented the moving party from fully and fairly presenting its case.[132] The Lane Law Firm's Initial 2014 Disclosure, which denied any connections with the Debtor, the Debtor's insiders, creditors, or other parties in interest, constituted a material misrepresentation. The statement was submitted under penalty of perjury and formed the basis upon which the Court approved employment. The subsequent discovery that Lane Law Firm had undisclosed prior and concurrent representation of the Debtor's insiders demonstrates that the Initial 2014 Disclosure contained falsities. This misrepresentation prevented the U.S. Trustee and parties in interest from fully and fairly presenting their positions regarding the Employment Application. Had the Initial 2014 Disclosure accurately disclosed the Lane Law Firm's prior and concurrent representation of the Debtor's principals and the facts suggesting insider adversity, the U.S. Trustee and other parties in interest would have had the opportunity to timely object to the employment and to present evidence regarding conflicts of interest. The delayed and incomplete correction of the initial statement, occurring only after investigation prompted by the meeting of creditors, deprived the U.S. Trustee and parties in interest of the opportunity to participate meaningfully in the employment decision.

---

[131] FED. R. CIV. P. 60(b)(3).
[132] *Montgomery v. Hall*, 592 F.2d 278, 278–79 (5th Cir. 1979).

The clear-and-convincing standard is satisfied. The undisclosed connections are documented facts, not matters of inference or dispute. The Initial 2014 Disclosure's denial of connections, coupled with the later discovery of prior and concurrent representation, establishes misconduct by clear and convincing evidence. This misconduct directly prevented the U.S. Trustee from objecting to employment on the basis of conflicts of interest and prevented parties in interest from raising timely objections grounded in the Lane Law Firm's lack of disinterestedness.

Accordingly, the Retention Order approving the Lane Law Firm's retention should be reconsidered and vacated on any of three independent grounds. First, under Rule 54(b), the interlocutory Retention Order may be revised because it was entered without full disclosure of material facts regarding conflicts of interest. Second, under Rule 60(b)(2), newly discovered evidence of undisclosed prior and concurrent representation and insider adversity satisfies the requirements for relief, as the U.S. Trustee exercised due diligence and the evidence is material and controlling. Third, under Rule 60(b)(3), the Lane Law Firm's misrepresentation in its Initial 2014 Disclosure, combined with delayed correction, constitutes misconduct that prevented the U.S. Trustee and parties in interest from fully and fairly presenting their positions regarding employment approval.

### D. Pattern of disclosure violations

The record establishes that the Lane Law Firm's employment order was vacated in *In re ATEG* in February 2026 for failure to disclose its dual representation of ATEG and its affiliated entity, Cruz Tec.[133] Moreover, in the separate bankruptcy case of Cruz Tec, the bankruptcy court, on May 11, 2026, disqualified the Lane Law Firm as debtor's counsel and vacated its employment retention due to its dual representation of Cruz Tec and ATEG.[134] These prior vacaturs demonstrate

---

[133] Bankr. 25-52669, ECF No. 85.
[134] Bankr. 25-35537, ECF No. 154.

that the Lane Law Firm's disclosure failures are not isolated incidents but reflect a pattern of disregard for the disclosure requirements of Bankruptcy Rule 2014(a). This pattern is significant for two reasons. First, it demonstrates that the Lane Law Firm cannot be trusted to comply with its disclosure and fiduciary obligations in this case. Second, it suggests that the Lane Law Firm's conduct may reflect a systemic problem within the firm's practices, rather than an isolated mistake. The pattern supports the conclusion that vacatur is necessary to protect the integrity of the bankruptcy process. Even after the February 2026 vacatur in *In re ATEG* occurred, the Lane Law Firm did not properly amend its disclosure to reflect the concurrent representation of the Steinmetzs and the Debtor or details of the investigation it conducted into the transactions between the Debtor and the Steinmetzs until it filed its Second Amended 2014 Disclosure on April 29, 2026 and only after ordered by the Court.[135] This demonstrates a willful disregard for the requirements of Bankruptcy Rule 2014(a) and the Court's authority to ensure the integrity of professional appointments.

For the foregoing reasons, the Court finds that the United States Trustee's Expedited Motion to Reconsider and Vacate Order Approving Employment of The Lane Law Firm, PLLC as Counsel for the Debtor is well-taken and must be granted. The Lane Law Firm violated Federal Rule of Bankruptcy Procedure 2014(a) by failing to disclose its prior and concurrent representation of the Debtor's insiders. This failure alone is sufficient under Fifth Circuit precedent to warrant vacatur of the employment order and denial of the employment application. Additionally, the Lane Law Firm fails to satisfy the statutory requirements of Section 327(a) because it is not a disinterested person and holds interests adverse to the estate. The firm's prior representation of the Debtor's insiders creates an irreconcilable conflict with the estate's need for independent counsel

---

[135] ECF No. 140.

to investigate and potentially pursue claims against those individuals. Finally, the motion is well-taken under Federal Rules of Civil Procedure 54(b), 60(b)(2), and 60(b)(3). The integrity of the bankruptcy process depends upon transparency and the disinterestedness of professionals appointed to serve the estate. The Lane Law Firm's conduct undermines that integrity and cannot be permitted to continue. The Court disqualifies the Lane Law Firm from further representation of the Debtor in this proceeding. The Court will separately issue an order setting a hearing in which the Lane Law Firm must show cause as to why any fees should be awarded, previously paid fees be disgorged or any other appropriate sanction should be assessed.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Wednesday, June 24, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**